

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM OLLIS | CIVIL ACTION |
| VERSUS | NO. 00-0126 |
| BURL CAIN, WARDEN | SECTION "A" (6) |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b) (1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED as untimely.**

### Procedural History

Petitioner, William Ollis, was convicted on June 24, 1982 of the second degree murder of one Richard Bowling, a violation of La. R.S. 14:30.1. Ollis was sentenced to a term

DATE OF ENTRY MAY 1 5 2000

DATE OF MAILING  MAY 1 5 2000

of life imprisonment without benefit of parole, probation or suspension of sentence.[1] His conviction and sentence were affirmed on direct appeal, *State v. Ollis*, 430 So.2d 668 (La., April 6, 1983) (TABLE, No. 82-KA-2199). Accordingly, Ollis' state conviction became final 14 days after he failed to apply for rehearing to the Louisiana Supreme Court, or on or about April 20, 1983. See, La.C.Cr. P. art. 922.

The state record reveals that Ollis subsequently filed an application for post-conviction relief with the state trial court in September 1991, which was denied in October 1991. See State Record Vol. 1 of 5. A second post-conviction application was filed with the state trial court on or about May 28, 1997.[2] On June 12, 1997, the trial court denied the application on the basis that the petition was repetitive and not in compliance with the state procedural rules governing the time for filing state post-conviction applications (See, La. C.Cr. P. art. 930.8). A request for reconsideration, filed on or about June 12, 1997[3] was also denied by the trial court on July 2, 1997. Petitioner filed a request for supervisory writs on or about July 18, 1997[4] and the Louisiana Supreme Court denied petitioner's request on February 13, 1998, simply writing, "Denied". *State ex rel. Ollis v State*, 706 So.2d 989 (La.1998) (97-KH-02043).

---

[1] *State v. Ollis*, Case. No. 88850, "E", 22nd Judicial District Court for the Parish of St. Tammany.

[2] Petitioner signed the petition as of May 28, 1997 and it was stamped "filed" on May 30, 1997. See State Rec. Vol. 1 of 5.

[3] Petitioner signed the motion for reconsideration on June 12, 1997 and it was stamped "filed" on June 23, 1997.

[4] Petitioner signed the request for supervisory writs on July 18, 1997 and it was stamped "filed" on July 24, 1997.

2

A third application for state post-conviction relief was filed in the state trial court on or about April 20, 1999,[5] which was denied by the trial court on May 14, 1999[6] and by the Louisiana Supreme Court on November 5, 1999. See, *State ex rel. Ollis v State,* 750 So.2d 185 (La., Nov. 5, 1999) (99-KH-1651). See also, State Rec. Vol. 1 of 5.

Ollis' federal *habeas* petition, filed with this court on December 12, 1999[7], challenges Ollis' conviction on the grounds that (1) the grand jury foreperson was discriminatorily selected; (2) trial counsel was ineffective in failing to raise a challenge to the discriminatory selection of the grand jury foreperson; (3) appellate counsel was ineffective in failing to raise a challenge to the discriminatory selection of the grand jury foreperson; and, (4) the trial court erred in not ordering the District Attorney to file a response to Ollis' post-conviction application prior to denying the application and in failing to address all the claims raised in the post-conviction application. The State concedes that petitioner has exhausted his claims before the State courts but urges this court to find petitioner's federal *habeas* application to be untimely pursuant to 28 U.S.C. §2244 (d)(1).

---

[5] Petitioner signed the petition on April 20, 1999 and it was stamped "filed" on April 21, 1999.

[6] The trial court ruled that the petition was denied for failure to comply with La.C.Cr. P. art. 930.8 and for failure to file a motion to quash the indictment, thus procedurally defaulting the issue of discriminatory selection of the grand jury foreperson.

[7] For federal pleadings submitted by prisoners acting *pro se,* the Fifth Circuit has recognized that the "mail box rule" applies and that the date when prison officials receive the pleading from the plaintiff for delivery to the Court is considered the time of filing for limitations purposes. *Cooper v. Brookshire,* 70 F.3d 377, 379 (5th Cir. 1995); *Thompson v. Raspberry,* 993 F.2d 513, 515 (5th Cir. 1993).

## **Timeliness under 28 U.S.C. §2244(d)(1)**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the pertinent provision for purposes of determining the timeliness of a *habeas* petition can be found at 28 U.S.C. §2244(d)(1). This provision sets forth the possible dates, depending upon the facts at issue, when prescription may commence to run.

### A. Applicability of § 2244(d)(1)(A)

Under this provision of the AEDPA, a petitioner is generally required to bring his *habeas corpus* claims filed pursuant to 28 U.S.C. § 2254 within one year of the date his conviction became final.[8]  *See* 28 U.S.C. § 2244(d)(1)(A) (West 1999), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220. For a petitioner such as Ollis, whose conviction became final prior to the AEDPA's effective date, a one-year grace period, from April 24, 1996 until April 24, 1997, was allowed during which a petitioner could timely file a federal *habeas* challenge. *Flanagan v. Johnson*, 154 F.3d 196, 201-02 (5th Cir. 1998). Ollis failed to file his federal habeas petition by April 24, 1997 and thus is time-barred under §2244(d)(1)(A) unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following ways recognized in the applicable law.

First, the AEDPA itself provides for interruption of the one-year limitations period

---

[8]The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997); *Nobles v. Johnson*, 127 F.3d 409, 414 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998).

during the time when a properly filed application for State post-conviction or other collateral review is pending. A "properly filed" application "is one which is 'permissible under state law' meaning that it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing". *Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir. 1999); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998). Of relevance to the issue of tolling in this case are Ollis' state post-conviction applications filed after April 24, 1996, the enactment date of the AEDPA yet before April 24, 1997, the conclusion of the one year *Flanagan* grace period. As previously discussed, Ollis first state post-conviction application filed *after* the enactment date of the AEDPA was not filed until May 28, 1997 - over a month after the expiration of the *Flanagan* grace period. This post-conviction application was thus filed too late to toll the limitations period. Therefore, petitioner cannot extend the April 24, 1997 deadline by availing himself of the tolling provision allowed under 28 U.S.C. §2244(d)(2).

Second, the Fifth Circuit has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled, but only in exceptional circumstances. *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998). "'Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. A 'garden variety claim of excusable neglect' does not support equitable tolling." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), citing *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). Moreover, in order

for equitable tolling to apply, the applicant must diligently pursue his §2254 relief. *Coleman*, 184 F.3d at 403. In this case, petitioner has not asserted any reason[9] that might constitute exceptional circumstances for why the one-year period should be considered equitably tolled, and the Court's review of the record reveals none. Therefore, the court concludes that petitioner's federal application for habeas relief is time-barred under 28 U.S.C. §2244(d)(1).

**B. Applicability of 2244 (d)(1)(C)**

In his federal petition for writ of *habeas corpus*, petitioner raises claims which he contends could only have been raised after the U.S. Supreme Court's decision in *Campbell v. Louisiana*, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998), a decision rendered by the U.S. Supreme Court on April 21, 1998. In order for petitioner's one year federal limitations period to commence running as of the date of that decision, petitioner must meet the requirements of 28 U.S.C. §2244(d)(1)(C).

28 U.S.C. § 2244(d)(1)(C) provides that a petitioner must file his writ for *habeas corpus* relief no later than one year from:

> the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

Thus, this court must determine whether the *Campbell* case represents a rule of law "newly

---

[9]Although petitioner claims that he could not have brought his claim under *Campbell v. Louisiana*, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) until after that case was decided, this claim for relief from the limitations period is more properly addressed (and will be addressed) under 28 U.S.C. §2244(d)(1)(C).

6

recognized" by the U.S. Supreme Court, and, if so, whether this new rule has been made retroactively applicable to cases on collateral review by the U.S. Supreme Court. Neither the U.S. Fifth Circuit nor any other federal circuit court has decided this exact issue.[10]

The undersigned's research yields little in the way of case law interpreting §2244(d)(1)(C). However, several cases have considered the parallel statutory provision found at §2244 (b)(2)(A) (permitting the filing of successive habeas petitions only where there "is a new rule of constitutional law, made retroactive by the Supreme Court, that was previously unavailable.") These cases hold that a Supreme Court decision makes a new rule retroactively applicable to collateral proceedings only if a petitioner can "point to a Supreme Court decision that either expressly declares the collateral availability of the rule (such as by holding or stating that the particular rule upon which the petitioner seeks to rely is retroactively available on collateral review) or applies the rule in a collateral proceeding". *In re Smith*, 142 F.3d 832 (5th Cir. 1998). See also, *Rodriguez v. Superintendent, Bay State Correctional Ctr.*, 139 F.3d 270, 275 (1st Cir.1998); *In re Vial*, 115 F.3d 1192, 1197 (4th Cir.1997) (en banc) ("a new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral

---

[10]The undersigned Magistrate Judge has addressed this issue in one other case, which is currently before the district judge awaiting entry of a final judgment. See, *John J. Storms, III v. LeBlanc*, 99-CV-3761, Section "L" (E.D. La., Fallon, J.).

7

proceeding"); and, *In re Hill*, 113 F.3d 181, 184 (11th Cir. 1997) (*Cage*-rule not applicable in successive habeas petition because applicant failed to establish that Supreme Court has made the new rule of constitutional law retroactive to cases on collateral review).[11] Applying this rationale to petitioner's case and assuming, for purposes of this analysis only, that *Campbell* is a new rule, 28 U.S.C. § 2244(d)(1)(C) requires that petitioner be given one year from the date of the *Campbell* decision to file his federal *habeas* only if petitioner can point to a Supreme Court decision making *Campbell* retroactive on collateral review or a Supreme Court decision wherein the Supreme Court actually applied *Campbell* retroactively in a collateral proceeding. Petitioner Ollis can make neither showing and thus is not entitled to the reap the benefit of §2244(d)(1)(C).

Moreover, prior to the enactment of the AEDPA, courts determined whether a change in the law was a "new rule" entitled to retroactive application on collateral review using the analysis set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Although some courts have opined that *Teague* may not have survived the AEDPA, see e.g., *United States ex rel. Giangrande v. Roth*, 1999 WL 184184, *6 (N.D. Ill., March 29, 2000), citing *Rodriquez*, 139 F.3d at 274,[12] this court still finds *Teague* instructive.

---

[11]But see, *West v. Vaughn*, 204 F.3d 53, 59 (3rd Cir. 2000)(Congress did not intend such a restrictive interpretation of the phrase "made retroactive").

[12]In *Rodriquez*, the court stated, "Rodriquez suggests that AEDPA merely memorializes *Teague's* approach to retroactivity . . . But Rodriquez's premise is wrong: AEDPA did not codify *Teague*. To the contrary, its plain language instructs that only new rules rendered retroactive on collateral review 'by the Supreme Court' may inure to the benefit of habeas prisoners. AEDPA contains no overt limitation on the types of new rules that the Supreme Court may declare retroactive on collateral review, but it invests the Court with sole authority to make such declarations." *Id.*

Under *Teague*, "[a] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final". *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. In petitioner's case, his conviction was final in 1983, long before the Supreme Court's decision in *Campbell*. In *Campbell*, the U.S. Supreme Court recognized, for the first time, third-party standing for cross-racial challenges to the grand jury selection process[13] under an equal protection analysis. To determine whether a rule is "new", a court must "survey the legal landscape as it then existed [at the time when petitioner's conviction became final] and determine whether a state court considering the defendant's claim . . . would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Fisher v. Johnson*, 169 F.3d 295, 304-05 (5th Cir. 1999)(clarification added). Surveying the legal landscape at the time Ollis' conviction became final, the Supreme Court had only recognized a criminal defendant's standing to challenge, **on due process grounds**, the exclusion of members of another race from his state grand jury. See *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). The Court had never, however, allowed similar standing for a criminal defendant on equal protection grounds. Consequently, a state court deciding a claim of discrimination in the selection of Ollis' grand jury/jury

---

[13] The *Campbell* court found that, although Campbell specifically challenged the discriminatory selection of grand jury forepersons, under the Louisiana system of selecting grand jury forepersons, the state judge effectively selected a grand juror. *Campbell*, 523 U.S. 392, 397, 118 S.Ct. 1419, 1422. The Court thus treated Campbell's claim as one challenging the discriminatory selection of grand jurors. *Id.* La. C.Cr. P. art. 413(B), the provision which controls the method of selecting grand jurors and grand jury forepersons in all Louisiana parishes except Orleans, has recently been changed to prevent the potential for discrimination identified in *Campbell*. See La. C.Cr. P. art. 413(B) (West 1991 & Supp. 1999), as amended by Act 1999, No. 984 §1.

forepersons would not have felt compelled to rule in Ollis' favor based upon existing legal precedent at that time.

Additionally, the court is cognizant of the fact that, in *Campbell*, the Court essentially found that its holding was an extension of its prior ruling in *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) wherein the Court allowed third-party standing to bring a cross-racial (*Batson*) challenge to the exclusion of Blacks from a criminal defendant's petit jury. However, even *Powers'* principle of third-party standing, decided in 1991, would not have been legal precedent at the time Ollis' conviction became final. Moreover, *Powers* has been held by several circuits to be a "new rule" under *Teague*. See *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), *cert. denied*, -- U.S. --, 120 S.Ct. 110, 145 L.Ed.2d 93 (1999); *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994); *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995), *cert. denied*, 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *Farrell v Davis*, 3 F.3d 370, 372 (11th Cir. 1993) (per curiam). If *Powers* would clearly be considered a "new rule" under *Teague*, it follows that the extension of *Powers* in *Campbell* would also be a "new rule" of law as to petitioner Ollis.

New rules of law are generally not retroactively applicable to cases during collateral proceedings unless it fits under the two exceptions set forth in *Teague*. *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. *Teague* permits retroactive application of a new rule whenever: (1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense; or (2) the rule announces a new "watershed"

rule of criminal procedure implicating the fundamental fairness and *accuracy* of the criminal proceeding. *Id.* at 311, 109 S.Ct. 1060. In the case at bar, the first *Teague* exception is not implicated. As to the second *Teague* exception, Ollis' has failed to provide this court with any basis to conclude that the racial make-up of his grand jury undermines the accuracy of his indictment or subsequent conviction. See *Coe*, 161 F.3d at 353 (denying retroactive application of a new rule under *Teague* when the defendant failed to show that gender discrimination during grand jury selection implicated the accuracy of his indictment.) Accordingly, this court concludes that, even under the framework established by *Teague*, Ollis is not entitled to have his one year limitations period commence as of April 21, 1998, the date of the *Campbell* decision. In sum, Ollis fails to show that he is relying on a newly recognized constitutional right made retroactively applicable by the Supreme Court to cases on collateral review. 28 U.S.C. §2244 (d)(1)(C).

## RECOMMENDATION

Accordingly, it is hereby **RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DENIED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. ***Douglass v. United Services Auto. Ass'n***, 79 F. 3d 1415, 1430 (5th Cir. 1996).

      New Orleans, Louisiana, this 15th day of May, 2000.

                              LOUIS MOORE, JR.
                              UNITED STATES MAGISTRATE JUDGE